UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LADELL HUGHES, by his mother and next friend, MARGARET HUGHES, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 06 C 5792 |
| v. | ) ) ) | Wayne R. Andersen District Judge |
| ASSISTANT STATE'S ATTORNEY SUZANNE KRAUSE, ASSISTANT STATE'S ATTORNEY GEORGE CANELLIS, UNKNOWN ASSISTANT STATE'S ATTORNEYS, CHICAGO POLICE DETECTIVE J. EGAN, CHICAGO POLICE DETECTIVE EDWARD CARROLL, CHICAGO POLICE DETECTIVE JAMES PRUGAR, CHICAGO POLICE DETECTIVE CARL LOEFFLER, CHICAGO POLICE OFFICER K. LEAHY, THE CITY OF CHICAGO, THE OFFICE OF THE COOK COUNTY STATE'S ATTORNEY, and THE COUNTY OF COOK | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ladell Hughes ("Hughes" or "Plaintiff") has sued various defendants, including two Illinois Assistant State's Attorneys (the "SAO Defendants" or, for purposes of this order, "Defendants"), for claims arising out of a criminal investigation that targeted Hughes. The SAO Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming: 1) they are entitled to absolute prosecutorial immunity, 2) the Eleventh Amendment prevents Plaintiff from suing them in their official capacities, and 3) sovereign immunity prevents this court from adjudicating Plaintiff's claims. For the reasons discussed

below, the motion is granted in part and denied in part.

## BACKGROUND

The Court takes the following factual contentions from the Complaint. On or around June 25, 2003, a woman named Tammy Rogers was assaulted in the City of Chicago. Ladell Hughes, then a fifteen-year-old boy with "dramatic and obvious" mental disabilities, was in the vicinity of the crime when it occurred . Though Hughes had done nothing to suggest he was guilty of assaulting Ms. Rogers, and though no evidence linked Hughes to the crime, Chicago Police Officer K. Leahy (a defendant in this case) detained Hughes and took him to Chicago's Area 4 Police Headquarters.

The precise nature and sequence of the events that transpired at Area 4 are not clear from the Complaint, but allegedly, some time after Hughes was taken to Area 4, four Chicago police detectives (who are also defendants in this suit) were assigned to the investigation and began to interrogate Hughes. At some point, Assistant State's Attorney Suzanne Krause joined the interrogation. Together, the five interrogators allegedly used "a number of improper and coercive interrogation tactics" and inflicted "physical abuse" upon Hughes. After allegedly subjecting Hughes to this abusive behavior, Krause and one of the detectives allegedly fabricated a confession and coerced Hughes into signing it.

As the criminal case against Hughes developed, evidence exonerating him came to light, including an audiotape and the results of a DNA test. Allegedly, despite being aware of this exculpatory evidence, the Office of the Cook County State's Attorney—along with Assistant State's Attorney George Canellis continued to prosecute the case. Hughes remained in jail during this time, and spent a total of over two years there.

In 2006, Hughes decided to sue various defendants: the police officers involved in the case, the City of Chicago, Cook County, the Office of the Cook County State's Attorney, various unknown Assistant State's Attorneys, and Assistant State's Attorneys Krause and Canellis. In the Complaint, which contains a total of twelve counts, Hughes claims that he is entitled to monetary relief under both Illinois and federal law, including 42 U.S.C. § 1983. In response to the Complaint, the SAO Defendants—Krause and Canellis—have filed a motion to dismiss.

The following counts of the Complaint apply to the SAO Defendants and are being challenged by the SAO Defendants in their motion to dismiss: Counts I-V (claims under §1983 for violations of due process); Count VII (an Illinois state law claim for false imprisonment); Count VIII (an Illinois state law claim for intentional infliction of emotional distress); Count IX (an Illinois state law claim for malicious prosecution); and Count X (another § 1983 claim). For the reasons set forth below, the SAO Defendants' motion to dismiss is granted in part and denied in part.

## DISCUSSION

In ruling on a motion to dismiss, the court must assume that all facts alleged in the complaint are true and must draw reasonable inferences in favor of the plaintiff. *See, e.g., Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004) (citation omitted). The court must then determine whether the complaint satisfies "two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint's factual allegations must give the defendant adequate notice of the plaintiff's claims, and second, the complaint must raise the possibility that the plaintiff has a right to relief above the speculative level. *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 & 1973 n. 14 (2007)).

I.   **Prosecutorial Immunity**

Despite broad language in 42 U.S.C. § 1983 seeming to impose liability on all state officials regardless of title or function, the Supreme Court has preserved the common law defense of absolute immunity for prosecutors faced with § 1983 suits. *Imbler v. Pachtman*, 424 U.S. 409, 417, 424 (1976); *see also Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (citing *Imbler*, 424 U.S. at 430). Illinois also recognizes some form of prosecutorial immunity, though the Illinois version appears to be slightly different from its federal counterpart. *See, e.g., Aboufariss v. City of De Kalb*, 713 N.E.2d 804, 812 (Ill. App. Ct. 1999); *cf. White v. City of Chicago*, 861 N.E.2d 1083, 1088-90 (Ill. App. Ct. 2006). Because Plaintiff raises claims under both § 1983 and state law, the SAO Defendants' absolute immunity defenses must be analyzed under both the federal and Illinois doctrines of prosecutorial immunity. *See, e.g., Aboufariss*, 713 N.E.2d at 812 (conducting a separate analysis for state prosecutorial immunity).

A.   **Absolute Prosecutorial Immunity and the § 1983 Claims**

With regard to the § 1983 claims, Plaintiff argues that ruling on the immunity issue at this stage of the litigation would "essentially create a heightened pleading standard." This argument might be persuasive in the context of qualified immunity. *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000) ("in many cases, the existence of *qualified* immunity will depend on the particular facts of a given case") (emphasis supplied). However, *Imbler* established absolute rather than qualified immunity for prosecutors, 424 U.S. at 424-25, and it is absolute immunity which is being invoked by the SAO Defendants in their Motion to Dismiss. The distinction between absolute and qualified immunity is important from a procedural standpoint; the *Imbler* Court noted that "absolute immunity defeats a suit at the outset, so long as

4

the official's actions were within the scope of the immunity," whereas qualified immunity must be evaluated in light of facts not necessarily present in the pleadings. *Imbler*, 424 U.S. at 419 n. 13; *see also Scheuer v. Rhodes*, 416 U.S. 232, 242-43 (1974). Because the pleadings themselves may provide sufficient support for the defense, it is appropriate for this Court to rule on the SAO Defendants' claim of absolute prosecutorial immunity in the context of the Motion to Dismiss.

In *Imbler*, the Supreme Court held that a prosecutor's actions must be "intimately associated with the judicial phase of the criminal process" to earn absolute immunity. *Imbler*, 424 U.S. at 430. Therefore, "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id*. at 431. However, when a prosecutor's actions are less closely associated with the judicial phase of the criminal process—when, for example, they are investigatory or administrative in nature—the prosecutor is entitled to only qualified immunity. *See Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000) (citing *Spiegel v. Rabinovitz*, 121 F.3d 251, 257-58 (7th Cir. 1997)). In *Buckley v. Fitzsimmons*, the Supreme Court clarified the boundaries of absolutely protected prosecutorial conduct, holding that a prosecutor is entitled to absolute immunity only when acting as an "advocate." *Buckley,* 509 U.S. 259, 274 (1993). According to the Court, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id*. (notes omitted). Thus, actions such as the "professional evaluation of the evidence assembled by the police" are absolutely protected because they are done in anticipation of judicial proceedings, whereas investigatory activities traditionally reserved for police officers are not afforded absolute immunity because they are not performed as part of the prosecutor's role as advocate for the state. *Id.* at 273.

5

### 1. Defendant Krause is not Immune from the § 1983 Claims

In this case, Plaintiff alleges that Defendant Krause acted in an investigatory capacity, akin to that of a police officer. As the SAO Defendants point out, this is a "boilerplate and conclusory portrayal" of Krause's actions. However, Plaintiff also alleges that Krause took part in the interrogation process and fabricated a confession for Plaintiff to sign. Additionally, Plaintiff alleges that at the time of the interrogation, no evidence linked him to the crime for which he was eventually charged.. Plaintiff's allegations are similar to the allegations at issue in *Patterson v. Burge*, where the court refused to dismiss parts of a complaint alleging that two state's attorneys "participated in [the plaintiff's] abusive interrogation, fabricated statements and admissions for him to sign, suppressed this and other exculpatory evidence, and lied [to state's attorneys and judges]." *Patterson*, 328 F. Supp. 2d 878, 892 (N.D. Ill. 2004); *see also Rex v. Teeples*, 753 F.2d 840, 844 (10th Cir. 1985) (refusing to extend absolute immunity to a prosecutor that gave Miranda warnings and interrogated a suspect); *cf. Hunt v. Jaglowski*, 926 F.2d 689, 693 (7th Cir. 1991) (applying absolute immunity to a prosecutor's interview of a suspect because the interview took place after the police had interrogated the suspect and received a confession). In light of this case law, the Complaint adequately alleges that Krause was acting in an investigatory rather than prosecutorial capacity when she took part in the interrogation and allegedly fabricated Plaintiff's confession. Thus, Plaintiff has alleged sufficient facts to defeat Defendant Krause's claim of absolute prosecutorial immunity with regard to the § 1983 claims. Counts I-IV and X survive with respect to Defendant Krause.

### 2. Defendant Canellis is Immune from the § 1983 Claims

Whether Plaintiff has alleged sufficient facts to defeat Defendant Canellis's claim of absolute immunity is less clear. Plaintiff alleges that the criminal case against him proceeded despite the fact that Canellis and others in the Cook County State's Attorney's Office were aware of exculpatory evidence. The Defendants do not deny that Canellis was the trial assistant entrusted with prosecuting Plaintiff. However, based on Plaintiff's allegations, Defendant Canellis possessed more than just the evidence exonerating Plaintiff—Canellis also had access to Plaintiff's false confession.

It is well established that, after evidence against a suspect has been assembled, the decision of whether to prosecute—or to forgo prosecution—is wholly protected by absolute prosecutorial immunity. *Spiegel*, 121 F.3d at 257; *Anderson*, 472 F.3d at 475-76. This is so even if the prosecutor pursues a case "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)).

In professionally evaluating the evidence before him and deciding to go forward with the criminal case against Plaintiff, Canellis and others at the State's Attorney's Office were fulfilling their duties as prosecutors and advocates. Thus, for these actions, Canellis is protected from liability under § 1983. *See Buckley*, 509 U.S. at 274. Therefore, Count V of the Complaint is dismissed, and Counts I, III, and X are dismissed as to Defendant Canellis. Nonetheless, this dismissal is without prejudice. If Plaintiff so chooses, he may plead additional facts that show Canellis was acting as an investigator rather than a prosecutor at the time of his involvement with Plaintiff's criminal case. *See id*. at 274 n. 5 ("a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards").

## B. Public Official Immunity and the State Law Claims

It is clear that Illinois law recognizes some form of prosecutorial immunity, though Illinois courts often analyze prosecutorial immunity under the rubric of "public official immunity." *See Aboufariss*, 713 N.E.2d at 812 (applying "public official immunity" to state law claims against an assistant state's attorney); *People v. Patrick J. Gorman Consultants, Inc.*, 444 N.E.2d 776, 778-79 (Ill. App. Ct. 1982) (applying "public official immunity" to state law claims against the Illinois Attorney General and his assistants); *contra White*, 861 N.E.2d at 1088 (discussing "absolute prosecutorial immunity" in a case involving only state law claims against state's attorneys). Under Illinois public official immunity, officials are protected only for acts "performed within their official discretion." *Aboufariss*, 713 N.E.2d at 812 (citing *Patrick J. Gorman*, 444 N.E.2d at 779). The boundaries of "official discretion" under Illinois law are similar to the boundaries of "prosecutorial" conduct under federal law. *Aboufariss*, 713 N.E.2d at 812). Thus, federal case law defining the scope of absolute prosecutorial immunity is useful in the context of Illinois public official immunity insofar as it sheds light on the boundaries of a defendant's "official discretion." *Id.* (referencing a discussion of federal law in "conclud[ing] that [a defendant's] actions fell within the scope of traditional prosecutorial functions" for the purposes of public official immunity).

However, though Illinois public official immunity is in some ways analogous to federal absolute immunity, the two are not coextensive. Under Illinois law, public official immunity is inapplicable if the state official acted with "malicious motives." *Aboufariss*, 804 N.E.2d at 812 (citing *Hanzel Construction, Inc. v. Wehde & Southwick, Inc.*, 474 N.E.2d 38, 42 (Ill. App. Ct. 1985)); *see also Horstman v. County of DuPage*, 284 F. Supp. 2d 1125, 1133 (N.D. Ill. 2003)

8

(finding it inappropriate to grant a prosecutor immunity from state law claims without a record of evidence indicating a lack of malice). This lack-of-malice requirement stands in sharp contrast to federal prosecutorial immunity, which applies even when prosecutors act "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Smith*, 346 F.3d at 742 (quoting *Henry*, 808 F.2d at 1238). To complicate matters, it appears as though the Illinois courts have not been consistent in applying the lack-of-malice requirement to prosecutors. In a recent case involving only state law claims, the Illinois Court of Appeals decided a prosecutorial immunity issue without mentioning the lack-of-malice requirement; in so doing, the court cited federal case law almost exclusively. *White*, 861 N.E.2d at 1088-90; *see also Weimann v. County of Kane*, 502 N.E.2d 373, 377 (Ill App. Ct. 1986) (discussing prosecutorial immunity with regard to a state law claim without mentioning the lack-of-malice requirement). In an even more recent case, the United States District Court for the Southern District of Illinois interpreted *White* and other Illinois cases to signal that "the Supreme Court of Illinois would follow the Supreme Court of the United States and hold that absolute prosecutorial immunity extends to willful and malicious conduct." *Barham v. McIntyre*, No. 04 CV 4027, 2007 WL 1576484, at *8 (S.D. Ill. May 30, 2007).

This Court declines to follow *Barham*. Instead, the Court views *White* as a case in which neither malice nor the lack-of-malice requirement was at issue. Nowhere in *White* did the Illinois Court of Appeals suggest that the plaintiff had alleged the defendants acted with "malicious motives." Rather, the *White* court focused its analysis on the difference between "investigative" and "prosecutorial" actions because the plaintiffs alleged that the defendants had acted as investigators rather than prosecutors. *White*, 861 N.E.2d at 1088. Viewed this way, the *White*

9

court's analysis of federal law is consistent with *Aboufariss*, which used federal law to define the boundaries of "official discretion" under Illinois public official immunity. *Aboufariss*, 804 N.E.2d at 812. Furthermore, the *White* court cited *Aboufariss* favorably and did not suggest that it was questioning the "malicious motives" element of public official immunity. *See White*, 861 N.E.2d at 1092. For these reasons, this Court adheres to *Aboufariss* and will consider the "malicious motives" exception to Illinois public official immunity.

### 1. Defendant Krause is not Immune from the State Law Claims

The confusion regarding the lack-of-malice requirement does not affect the analysis of Illinois public official immunity with respect to Defendant Krause. As explained above, Plaintiff has pleaded sufficient facts to show that Krause was not acting as a prosecutor when she interrogated Plaintiff and allegedly fabricated his confession. Because the boundaries of "official discretion" under Illinois public official immunity are similar to the boundaries of "prosecutorial conduct" under federal law, s*ee Aboufariss*, 804 N.E.2d at 812, Illinois prosecutorial immunity is unavailable to Krause regardless of her state of mind. Therefore, Counts VII, VIII, and IX survive with respect to Defendant Krause.

### 2. Defendant Canellis is not Immune from the State Law Claims

As noted above, Canellis acted firmly within the scope of federal prosecutorial immunity when he weighed evidence and chose to pursue the criminal case against Plaintiff. Therefore, it is likely that his actions were within the scope of his "official discretion" under Illinois public official immunity. *See id*. However, Plaintiff's Complaint adequately alleges that Canellis acted with malice. In the Complaint, Plaintiff claims that each of the individual defendants was "willful, wanton and malicious." Furthermore, Plaintiff specifically alleges that Canellis "knew

10

that the DNA evidence exonerated Ladell" but allowed the case against him to continue. Canellis's actions, as pleaded by Plaintiff, suggest a "malicious motive" and as such are outside the bounds of Illinois public official immunity. *See Aboufariss*, 804 N.E.2d at 812; *Horstman*, 284 F. Supp. 2d at 1133. Therefore, Counts VIII and IX survive as to Defendant Canellis.

## II.     The Eleventh Amendment

The SAO Defendants argue that the Eleventh Amendment bars Plaintiff's § 1983 claims against the SAO Defendants in their official capacities. However, as the SAO Defendants recognize, whether the Plaintiff is suing the SAO Defendants in their official or personal capacities is not clear from the face of the Complaint. The distinction between official and personal capacity suits is critical in cases such as this one. In an official capacity suit, the plaintiff is deemed to sue the state itself and thus the Eleventh Amendment may apply to bar the suit. *See Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992). On the other hand, in a personal capacity suit, the plaintiff seeks to recover damages from the defendant's personal assets only, and therefore the Eleventh Amendment does not apply. *See id*; *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

In *Stevens v. Umsted*, the Seventh Circuit stated: "A § 1983 complaint that fails to specify the capacity in which the defendants are being sued is ordinarily construed to be against them in their *official* capacity." *Stevens*, 131 F.3d 697, 706 (7th Cir. 1997) (emphasis supplied). However, the court went on to explain that the way in which the parties have handled a case may show that the plaintiff is, in fact, seeking recovery against the defendants in their personal capacities. *Id.* at 707 (citations omitted). This method of analysis is supported by Supreme Court precedent, which recognizes that the "course of proceedings" in a case is indicative of "the

11

nature of the liability sought to be imposed." *Graham*, 473 U.S. at 167 n. 14 (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)). In this case, because the SAO Defendants have invoked the defense of absolute immunity—a defense that is only applicable in personal capacity suits, see *Graham*, 473 U.S. at 166-67 (citing *Imbler*, 424 U.S. 409)—the claims against the SAO Defendants will be construed as being brought against them in their personal capacities and therefore, those claims survive the SAO Defendants' Eleventh Amendment challenge.

## III. Sovereign Immunity and Subject Matter Jurisdiction

The SAO Defendants seek to invoke the sovereign immunity of the State of Illinois to prevent this Court from adjudicating Plaintiff's state law claims. With respect to state law causes of action brought against officials of a state government, state sovereign immunity rules apply. *See Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *see also Benning v. Bd. of Regents of Regency Universities*, 928 F.2d 775, 779 (7th Cir. 1991) ("state rules of immunity are binding in federal court with respect to state causes of action") (citations omitted). The Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1, provides that the State of Illinois cannot be made a defendant in any court unless one of a limited number of exceptions to the statute applies. One such exception is found in the Illinois Court of Claims Act, 705 Ill. Comp. Stat. 505/8, which requires all claims against the State "sounding in tort" to be heard in the Illinois Court of Claims. *See also Jinkins v. Lee*, 807 N.E.2d 411, 417 (Ill. 2004) (discussing the constitutional and statutory framework for Illinois sovereign immunity). Thus, if the state law claims in this case are being brought against Illinois itself rather than the SAO Defendants individually, this Court may lack jurisdiction over them.

The determination of whether a state law claim has been brought against the State of Illinois is more difficult under Illinois law than it is under the Eleventh Amendment. Specifically, Illinois law states that the "determination … depends on the issues raised and the relief sought" rather than on whether the defendant is sued in an "official" capacity. *Id.* (citing *Fritz v. Johnston*, 807 N.E.2d 461, 466 (Ill. 2004)). To determine whether the "issues raised" in a case implicate sovereign immunity under Illinois law, there is a three-part test:

> [A]n action is against the state when there are: (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Jinkins*, 807 N.E.2d at 418 (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)) (internal quotation marks and formatting omitted). In evaluating the "relief sought," the court considers whether a judgment for the plaintiff "could operate to control the actions of the State or subject it to liability." *Jinkins*, 807 N.E.2d at 418 (quoting *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992)). It is settled that Illinois State's Attorneys and Assistant State's Attorneys are employees of the State of Illinois. *White*, 861 N.E.2d at 1095-96 (adopting the reasoning of *Sneed v. Howell*, 716 N.E.2d 336 (Ill. App. Ct. 1999), and applying it to both a state's attorney and an assistant state's attorney). Therefore, this Court must evaluate the "issues raised" and must determine whether Plaintiff has sufficiently alleged that the SAO defendants have "acted beyond the scope of [their] authority through wrongful acts." *Jinkins*, 807 N.E.2d at 418 (citation omitted).

Under Illinois law, "malice, if well pleaded, is outside the scope of a State employee's authority." *Welch v. Illinois Supreme Court*, 751 N.E.2d 1187, 1195 (Ill. App. Ct. 2001); *see also Hoffman v. Yack*, 373 N.E.2d 486, 490 (Ill. App. Ct. 1978) (collecting cases) ("It is here

alleged that Yack's actions were deliberate, malicious and not within the scope of his duties. When an employee of the State exceeds his authority by wrongful acts . . . the injured party may seek relief from the wrongdoer personally . . . ."). Apparently, however, to plead malice in an Illinois court "there must be specific facts supporting the allegations, which, if proved, would show malicious conduct." *Welch*, 751 N.E.2d at 1195. Nonetheless, in *Patterson v. Burge*, the court was satisfied with the plaintiff's allegations, which claimed that defendants acted "intentionally and maliciously in violation of Illinois state law," and allowed the complaint to survive a state sovereign immunity challenge. *Patterson*, 328 F. Supp. 2d at 887 (citing *Welch*, 751 N.E.2d at 1195). The result in *Patterson* is supported by pleading practice in the federal courts and by Federal Rule of Civil Procedure 9(b), which states, "Malice … and other condition of mind of a person may be averred generally."

In this case, Plaintiff alleges that his injuries were a direct and proximate result of the willful, wanton and malicious actions of Defendants and he alleges, as part of his malicious prosecution claim, that Defendants acted with malice. These allegations of malice are not entirely conclusory—they find support in Plaintiff's more specific factual allegations. For example, according to Plaintiff, Defendant Krause knew or reasonably should have known that Plaintiff was vulnerable, disabled and easily manipulated and she continued her allegedly coercive interrogation despite this knowledge. Plaintiff also alleges that Canellis knew that the DNA evidence exonerated Plaintiff but he allowed the criminal case against Plaintiff to proceed. Because precedent instructs that the Complaint must be read in the light most favorable to Plaintiff in the context of a motion to dismiss, *Singer*, 383 F.3d at 597, this Court finds that

malice has been adequately alleged and that therefore the issues raised by Plaintiff's Complaint do not indicate that he is bringing his state law claims against the State of Illinois.

As to the relief sought by Plaintiff, this Court finds that a judgment in favor of Plaintiff would not operate to control the actions of the State or subject it to liability. *See Jinkins*, 807 N.E.2d at 418 (citation omitted). Plaintiff seeks only money damages, and though he seeks to recover from the City of Chicago for the actions of the defendant police officers, he does not seek to recover from the State of Illinois for the actions of the SAO Defendants. Thus, the state law claims against the SAO Defendants "can in no way be said to 'control' any action of the State and the State is not the 'real party in interest'." *Madden v. Kuehn*, 372 N.E.2d 1131, 1134 (Ill. App. Ct. 1978).

In sum, neither the issues raised nor the relief sought in this case implicate the sovereign immunity of the State of Illinois. *Jinkins*, 807 N.E.2d at 417 (citation omitted). The state law claims against the SAO Defendants may proceed in this Court.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (#39) is granted in part and denied in part. Count V of the Complaint is dismissed without prejudice, and Counts I, III, and X are dismissed without prejudice as to Defendant Canellis. The remaining counts stand. It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: March 31, 2008